# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**ERIC MCCATHERN,**          )
                                        )
       **Petitioner,**        )
                                          )   **No. 3:18-cv-00408**
**v.**                                      )   **Judge Trauger**
                                        )
**JONATHAN LEBO,**     )
                                        )
       **Respondent.**      )

## MEMORANDUM

Eric McCathern, an inmate of the West Tennessee State Prison in Henning, Tennessee, filed an amended pro se petition for the writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2011 convictions and sentence for aggravated burglary, possession of over 26 grams of cocaine with intent to sell or deliver within 1,000 feet of a school zone, and possession of drug paraphernalia. (Doc. No. 1-2.) The respondent, Warden Jonathan Lebo, filed the state court record (Doc. No. 11) and an answer urging dismissal. (Doc. No. 12.) The petitioner filed a reply. (Doc. No. 14.) The petition is ripe for review on the merits, and this court has jurisdiction pursuant to 28 U.S.C. § 2241(d). Having fully considered the record, the court finds that an evidentiary hearing is not needed. For the following reasons, the petitioner is entitled to habeas relief on one claim. The petition will be granted.

## I.     Procedural History

On August 28, 2009, the petitioner was indicted in Davidson County, Tennessee, for aggravated burglary, possession of 26 grams or more of cocaine with intent to sell or deliver within 1,000 feet of a school zone, and possession of drug paraphernalia. (Doc. No. 11-1 at 4-6.) The aggravated burglary charge expressly alleged that the petitioner entered a habitation "with the

intent to commit possession of a controlled substance containing cocaine with intent to sell or deliver" as separately charged in the indictment. (*See id*.) On August 9, 2010, after the indictment was read on the first day of trial, the petitioner stated that he would "plead guilty" to "the burglary" and not guilty to the other two counts. *McCathern v. State*, No. M2016-02143-CCA-R3-PC, 2017 WL 5462491, at *1 (Tenn. Crim. App. Nov. 14, 2017), *perm. app. denied* (Tenn. Mar. 14, 2018) (hereinafter "*McCathern II*"); (Doc. No. 11-1 at 15). The trial proceeded without further colloquy. *McCathern II*, 2017 WL 5462491, at *1. The trial court eventually charged the jury on all three counts because it concluded that the petitioner's plea was only to a lesser-included offense. *Id*. The jury failed to reach a verdict, and the trial court declared a mistrial on all counts. *Id*. at *2; (Doc. No. 11-1 at 17).

The petitioner's case was retried on April 4, 2011, before a different judge. *McCathern II*, 2017 WL 5462491, at *2. After the indictment was read on the first day of trial, the petitioner "pled guilty" to aggravated burglary and not guilty to the other counts. *Id*. Again, no colloquy was held, and, again, the trial court charged the jury on all three counts. *Id*. After testimony that "largely replicated" the first trial, the jury found the petitioner guilty on all counts. *Id*. The trial court denied the petitioner's motion for a new trial.[1] (*See* Doc. Nos. 11-1 at 31-34; 11-8 at 2-3.)

On May 11, 2011, the trial court sentenced the petitioner to consecutive 10-year and 25-year terms of imprisonment on counts one (aggravated burglary) and two (possession of cocaine with intent to sell or deliver), and to a concurrent misdemeanor sentence of 11 months and 29 days on count three (drug paraphernalia). (Doc. No. 11-1 at 28-30); *State v. McCathern*, No. M2011-01612-CCA-R3-CD, 2012 WL 5949096, at *1 (Tenn. Crim. App. Nov. 16, 2012), *perm. app. denied* (Tenn. Feb. 25, 2013) (hereinafter "*McCathern I*"). Thus, the petitioner received a total

---

[1] At the hearing on the motion for a new trial, trial counsel declined the invitation to make oral argument, and asked to be relieved from further representation of the petitioner. (*See* Doc. No. 11-8.)

effective sentence of 35 years of imprisonment, with 15 years to be served at 100%. *Id*. The petitioner challenged the sufficiency of the evidence and his sentence on appeal. *McCathern II*, 2017 WL 5462491, at *2; *McCathern I*, 2012 WL 5949096, at *5; (Doc. No. 11-1 at 35). The Tennessee Court of Criminal Appeals ("TCCA") affirmed, *McCathern I*, 2012 WL 5949096, at *5, and the Tennessee Supreme Court denied discretionary review. (Doc. No. 11-14.)

The petitioner filed a pro se petition for post-conviction relief in state court. (*See* Doc. No. 11-15 at 21-32.) The post-conviction court appointed counsel, held an evidentiary hearing, and, on October 18, 2016, denied relief. (Doc. Nos. 11-15 at 33-65, 70-96; 11-18.) In particular, the trial court concluded that trial counsel's advice to admit guilt on the aggravated burglary charge was a reasonable strategic decision. *McCathern II*, 2017 WL 5462491, at *3. On appeal, the TCCA concluded that trial counsel's advice constituted deficient performance, but affirmed nonetheless based on its conclusion that the petitioner was not prejudiced. *Id*., at *3-7. The Tennessee Supreme Court denied discretionary review. (Doc. No. 11-29.)

## II. Evidence at Trial

On the night of May 23, 2007, a team of Metropolitan Nashville Police Department ("MNPD") officers approached a hilltop area known for drug trafficking. *McCathern II*, 2017 WL 5462491, at *1. To avoid being seen, three officers parked several blocks away and approached on foot. *Id*. They observed the petitioner and another man approach a stopped vehicle for a "suspected a drug transaction." *Id*. The petitioner and the other man then walked to an apartment that was "completely dark and appeared abandoned." *Id*. The petitioner entered the apartment through a waist-high window. *Id*. As the other man followed, the officers called for him to stop. *Id*. The other man appeared to put something down and moved away from the window. *Id*. Within reach of the other man, officers discovered a gun, two digital scales, and a small quantity of cocaine. *Id*. The

petitioner then exited the apartment at the direction of officers. *Id*. The petitioner was carrying $163 and stated that he did not live at the residence. *Id*.

Officers searched the uninhabited apartment and found two plastic chairs, a jacket, trash, and feces. *Id*. There was no edible food, clothing, or personal items. *Id*. In the kitchen, officers found plastic sandwich baggies, and there was a large quantity of cocaine in a closed oven. *Id*. Officers did not hear the petitioner open the oven door during his "[m]aybe a minute, maybe two" in the apartment, and they made no attempt to take fingerprints from the oven. *Id*.

The manager of the apartment building testified that the apartment was rented but not occupied. *Id*. The manager told the tenants that they needed to move in, turn on utilities, and otherwise live there. *Id*. He testified that the tenants had "taken possession" of the apartment by putting a chair at a window, and that it appeared that the tenants were not living there.[2] *Id*.

## III.    Standard of Review

### A.    Habeas Relief

A federal habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Cassano v. Shoop*, 1 F.4th 458, 465 (6th Cir. 2021) (citing *Woodford v. Garceau*, 538 U.S. 202, 210 (2003)). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford*, 538 U.S. at 206 (internal citations and quotation marks omitted). It "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)

---

[2] MNPD Lieutenant William Mackall also gave expert testimony regarding drug investigations. (Doc. No. 1-2 at 124-36.) Mackall's direct testimony was general in nature and included no conclusions specific to the petitioner. (*Id*.) On cross, trial counsel raised with Mackall the crime scene procedures used by MNPD at the empty apartment; however, Mackall gave mostly non-specific responses. (*See id*. at 138-48.)

4

(Stevens, J., concurring)). Under AEDPA, "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system," *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003), and state courts are considered "adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) (explaining that AEDPA "demands that state-court decisions be given the benefit of the doubt") (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

 "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citations omitted); 28 U.S.C. § 2254(a). AEDPA further restricts federal courts from providing relief on habeas claims that were previously "adjudicated on the merits" in the state courts unless the state-court adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cassano*, 1 F.4th at 466 (quoting 28 U.S.C. § 2254(d)); *Harrington*, 562 U.S. at 100.

"Under the 'contrary to' clause, a federal habeas court may grant the writ 'if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court." *Id.* (citing

*Harrington*, 562 U.S. at 100; *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). An incorrect or erroneous application of clearly established federal law is not the same as an unreasonable one; "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016) (quoting *White v. Woodall*, 572 U.S. 415, 427 (2014)); *Harrington*, 562 U.S. at 103. Likewise, a state court decision involves an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting 28 U.S.C. § 2254(e)(1)); *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El*, 537 U.S. at 340).

### B.    Exhaustion and Procedural Default

Before a federal court may review the merits of a Section 2254 habeas claim, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *Harrington*, 562 U.S. at 103. To be properly exhausted, each claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971)) (explaining that a habeas petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the TCCA. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). A petitioner must then present to a federal court essentially the same facts and legal theories that were considered and rejected by the

state courts. *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002) (citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). The burden is on a petitioner to demonstrate compliance with the exhaustion requirement or that the available state procedure would be futile. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

The exhaustion requirement works together with the procedural-default doctrine, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *O'Sullivan*, 526 U.S. at 848. A petitioner procedurally defaults a claim when he fails to properly exhaust available remedies and can no longer do so because state procedural rules have closed off any avenue for state court review on the merits. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).

To overcome a procedural default, a petitioner may show "good cause for the default and actual prejudice from the claimed error." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)); *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014) (citing *Coleman*, 501 U.S. at 754). A petitioner may establish cause by "show[ing] that some objective factor external to the defense" – a factor that "cannot be fairly attributed to" the petitioner – "impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). Objective impediments include an unavailable claim or interference by officials that made compliance with the rule impracticable. *Id*. Attorney error does not constitute cause unless it is constitutionally ineffective assistance of counsel. *Edwards*, 529 U.S. at 451-52; *Benton*, 942 F.3d at 307-08. Generally, however, a claim of ineffective assistance

7

must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.[3] *Murray*, 477 U.S. at 489.

Ineffective assistance of post-conviction counsel may establish cause under two circumstances. First, the complete abandonment (of the representation) by counsel during state post-conviction proceedings without notice to the petitioner may establish cause to excuse default. *Maples v. Thomas*, 565 U.S. 266, 288-89 (2012). Second, ineffective assistance of post-conviction counsel may establish the cause needed to excuse procedural default regarding substantial claims of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013); *see also Sutton*, 745 F.3d at 792 (holding that *Martinez* and *Trevino* apply in Tennessee).

If cause is established, a petitioner must also demonstrate actual prejudice. To do so, a petitioner must demonstrate that the constitutional error "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). This means that "a petitioner must show not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (emphasis in original); *Frady*, 465 U.S. at 170. In the alternative, a court may bypass these requirements if a petitioner presents an "extraordinary case" whereby a constitutional violation "probably resulted" in the conviction of someone who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004); *Benton*, 942 F.3d at 307.

---

[3] If the ineffective-assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective assistance claim. *Edwards*, 529 U.S. at 452-53.

8

## IV.    Analysis

With these principles in mind, the court turns to the four claims raised by the petitioner. The petition asserts that trial counsel rendered constitutionally ineffective assistance by: (1) advising the petitioner to plead guilty to aggravated burglary at trial; (2) failing to protect the petitioner's Fifth Amendment rights in connection with that guilty plea; (3) failing to move for a new trial on the ground that the petitioner was the rightful tenant of the apartment; and (4) failing to contest the duplicity of the indictment. (*See* Doc. Nos. 1-2, 2, 14.) The petitioner further claims that it was unreasonable for the state courts to conclude that he was not prejudiced by trial counsel's deficient performance.[4] (*Id.*)

### A.    Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of a person accused of a crime to the effective assistance of counsel. To succeed on a claim of constitutionally ineffective assistance of counsel, a petitioner "must show both deficient performance by counsel and prejudice." *Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) and citing *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984)); *see also Bell*, 535 U.S. at 694-95. These dual requirements provide that, while reasonable attorneys may disagree on the appropriate strategy for defending a client, the Constitution is violated only where counsel's performance is

---

[4] The respondent has filed an answer that provides limited insight. The respondent addresses Claim One, but not in a serious way. The respondent closely repeats the state court's discussion and adds, without any fresh analysis, that it is "obvious" that the "[p]etitioner and his associate were using the apartment to package and distribute cocaine." (Doc. No. 12 at 9-13.) It is questionable whether this meager effort complies with Habeas Rule 5 or the court's order to "respond to the petitioner's argument that he is entitled to habeas relief on the claim with appropriate reasoned legal and factual argument." (Doc. No. 8 at 2-3.) The respondent also replies to another claim concerning a motion to suppress, but the petitioner does not advance this claim in the petition; rather, the petitioner raises a claim concerning the motion for a new trial. In any event, based on the tenor of the respondent's filing, the court infers that the respondent generally finds no fault with the state court's determinations.

"so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc)); *see also Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). A court may address performance and prejudice in any order and end the inquiry if one requirement is not met. *Strickland*, 466 U.S. at 697.

Trial counsel's performance is constitutionally deficient when it falls below an objective standard of reasonableness measured by prevailing professional norms. *Strickland*, 466 U.S. at 686-87; *Richardson v. Palmer*, 941 F.3d 838, 856 (6th Cir. 2019); *Bigelow*, 367 F.3d at 570. When evaluating performance, a court must be "highly deferential," consider the totality of evidence, and apply a "strong presumption" that trial counsel's conduct falls within a "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 695; *Harrington*, 562 U.S. at 104. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989) (quoting *Strickland*, 466 U.S. at 691). Thus, the prejudice element requires a petitioner to show that there is a "reasonable probability" that the result of the trial would have been different but for counsel's unprofessional errors. *Premo*, 562 U.S. at 122 (citing *Harrington*, 562 U.S. at 104-05); *Strickland*, 466 U.S. at 694; *Bigelow*, 367 F.3d at 570. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This does not require a showing that

10

counsel's actions "more likely than not altered the outcome," but "the likelihood of a different result must be substantial, not just conceivable."[5] *Harrington*, 562 U.S. at 112 (quoting *Strickland*, 466 U.S. at 693, 697); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). In reaching this conclusion, a court considers whether the result of the trial was "fundamentally unfair or unreliable," *Bigelow*, 367 F.3d at 570 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)), or "infect[ed] . . . with error of constitutional dimensions." *Richardson*, 941 F.3d at 856 (quoting *Murray*, 477 U.S. at 494).

Additionally, due to the restrictive scope of review under AEDPA, *see Cassano*, 1 F.4th at 466 (quoting 28 U.S.C. § 2254(d)), "[t]he pivotal question" on federal habeas review is not simply whether the *Strickland* standard was satisfied, but rather "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. As the Supreme Court has emphasized:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of [Section] 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.' A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (quoting *Williams*, 529 U.S. at 410) (emphasis in original); *see also Burt*, 571 U.S. at 15 (explaining that habeas review of ineffective assistance of counsel "gives both the state court and the defense attorney the benefit of the doubt") (quoting *Pinholster*, 563 U.S. at 190). Thus, a state court's determination that an ineffective assistance of counsel claim lacks merit under *Strickland*

---

[5] Accordingly, a petitioner need not demonstrate actual innocence in order to establish prejudice. *Bigelow*, 367 F.3d at 570.

"precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 652 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### B. Claim One: Trial counsel was constitutionally ineffective when he advised the petitioner to admit guilt to aggravated burglary

The petitioner first claims that trial counsel rendered constitutionally ineffective assistance by advising him to admit guilt to aggravated burglary. (Doc. No. 2 at 9-10.) The petitioner contends that trial counsel knew the admission meant that the petitioner was also confessing that he entered the apartment with the intent to commit the drug crime charged in the indictment. (*Id.*) Thus, the petitioner argues that trial counsel's advice caused him to unwittingly acknowledge that he intended to possess cocaine with the intent to sell or deliver it. (*Id.* at 10.) This claim is fully exhausted.

#### 1. Background

After the indictment was read at the first trial, the petitioner stated that he would plead guilty to "the burglary" and not guilty to the other charges. *McCathern II*, 2017 WL 5462491, at *1. The case proceeded without further colloquy. *Id*. At the close of the state's proof, trial counsel moved for judgment of acquittal on the ground that there was no evidence that the petitioner knew about the cocaine in the apartment's oven. *Id*. The trial court "dr[e]w attention to the fact that as part of the burglary charge, the petitioner had admitted that he was intending to commit a felony inside the residence." *Id*. The trial court therefore denied the motion "based on the plea." *Id*. During closing arguments, trial counsel again argued that the petitioner had no possessory interest in the cocaine in the oven. *Id*. at *2. The state, however, highlighted that the petitioner "pled guilty" to aggravated burglary, a charge "that contains the component of committing a felony, which is [the

drug charge]." *Id*. The state in particular contended that the petitioner had effectively "pled guilty" to the "possession and intent" elements of the drug charge. *Id*.

At the start of the second trial on the same indictment, trial counsel again instructed the petitioner to admit guilt to aggravated burglary. *Id*.; (Doc. No. 11-17.) During closing arguments, trial counsel again argued that the state failed to prove possession. *McCathern II*, 2017 WL 5462491, at *2. And the state again argued to the jury that the drug charge was the underlying felony implicated by the petitioner's admission to aggravated burglary: "[A] component of [aggravated burglary], as we discussed several times, is breaking into a facility with intent to commit [the drug charge]." *Id*. Thus, the state contended, the petitioner's admission of guilt on the aggravated burglary charge "sheds great light" on the outcome of the drug charge. *Id*.

At the post-conviction hearing, trial counsel testified that his strategy was to dissociate the petitioner from the cocaine in the oven because the state "couldn't prove" that the petitioner had any connection to the apartment or the drugs.[6] (Doc. No. 11-18 at 13-15); *McCathern II*, 2017 WL 5462491, at *2. Trial counsel advised the petitioner to plead guilty to burglary at the first trial, and this "took [the judge] back a little bit." *McCathern II*, 2017 WL 5462491, at *2; (Doc. No. 11-18 at 18). Trial counsel felt the strategy was "successful." *McCathern II*, 2017 WL 5462491, at *2; (Doc. No. 11-18 at 18, 24-26). The petitioner testified that trial counsel "t[old] him what [the defense] was going to be," told the petitioner to plead guilty to burglary charge, and did not discuss the matter further." *McCathern II*, 2017 WL 5462491, at *3; (Doc. No. 11-18 at 37-38). The petitioner testified that he admitted guilt to burglary at the first trial because he did not understand the charges. *McCathern II*, 2017 WL 5462491, at *3; (Doc. No. 11-18 at 36). The petitioner

---

[6] Trial counsel also testified that the petitioner told him that "he had used an alias to rent the apartment and was the rightful tenant," and the petitioner confirmed that he told trial counsel that he leased the apartment. *McCathern II*, 2017 WL 5462491, at *2-3.

testified that trial counsel gave the same advice at the second trial, informing the petitioner that admitting guilt to aggravated burglary was "the only way that Judge Blackburn wouldn't hammer [him]." *McCathern II*, 2017 WL 5462491, at *3; (Doc. No. 11-18 at 39.) The petitioner testified that trial counsel instructed: "This is what we're going to do, you're going to come in with tight clothes on and scraggly face" and "a shirt that's real raggedy and we're going to plead guilty to aggravated burglary. . . . [B]elieve in me." (Doc. No. 11-18 at 39).

## 2. Denials of Post-Conviction Relief

The post-conviction court concluded that trial counsel's advice to admit guilt to aggravated burglary was "a reasonably based strategic decision" that did not constitute deficient performance or prejudice the petitioner. (Doc. No. 11-15 at 83-87); *McCathern II*, 2017 WL 5462491, at *3. On appeal, the TCCA concluded that the petitioner had made an "acknowledgement of guilt" rather than a formal guilty plea, and thus the petitioner's "statement that he pled guilty essentially amounted to an in-court confession made at the behest of his attorney." *McCathern II*, 2017 WL 5462491, at *4-5 (citing *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002)). The TCCA therefore applied the *Strickland* standard for constitutionally ineffective assistance of counsel to determine "whether trial counsel's advice to acknowledge guilt in front of the jury was deficient and prejudicial."[7] *Id*. at 5.

The TCCA first concluded that trial counsel's advice constituted objectively deficient performance because it caused the petitioner to concede the contested elements of the drug charge. *Id*. As the TCCA explained:

---

[7] While the TCCA's opinion occasionally employs imprecise language, it is evident that the TCCA understood the *Strickland* standard and applied it in the petitioner's case. *See, e.g.*, *McCathern II*, 2017 WL 5462491, at *4-6 (reciting and applying performance and prejudice standards under *Strickland* and state law progeny).

14

In making his confession, the Petitioner effectively admitted that he had entered a habitation "with the intent to commit possession of a controlled substance containing cocaine with intent to sell or deliver," as charged in the indictment. To convict the Petitioner of the drug charge, the State had to show that the Petitioner knowingly possessed twenty-six grams or more of cocaine with the intent to sell or deliver and that the offenses occurred within one thousand feet of school property. There was no dispute regarding the amount of cocaine at issue or that the location of the apartment within one thousand feet of a school. Accordingly, the only contested elements were whether the Petitioner possessed the cocaine, whether he did so with the intent to sell or deliver it, and whether he acted knowingly. By pleading guilty to the aggravated burglary, the Petitioner acknowledged that he intended to possess cocaine with the intent to sell or deliver it, essentially conceding that he acted with the requisite mens rea and that the cocaine was destined for resale. The Petitioner's confession of an intent to possess the cocaine in order to sell or deliver it also had bearing on the jury's determination of the sole remaining question, whether he actually obtained possession.

*Id*. Moreover, the TCCA determined that "[t]rial counsel should have been aware that [the petitioner] was conceding elements of the crime both because the elements were contained in the indictment and because the issue had been drawn to his attention at the previous mistrial." *Id*. In addition, the court highlighted that "trial counsel could have argued that the Petitioner was trespassing on the property without advising the Petitioner to admit that he intended to commit the felony of possession of cocaine." *Id*.

However, the TCCA concluded that the petitioner failed to show that he was prejudiced by trial counsel's advice. *Id*. The TCCA cited the following evidence to support its conclusion: (1) the petitioner and another person were seen "entering [a] seemingly empty apartment through the window" after "approaching a car in a parking lot"; (2) the other person was stopped before fully entering the apartment and found to have put down a small amount of cocaine, a gun, and two scales; (3) the apartment contained nothing but two chairs and some drug paraphernalia, and it appeared to function as a drug dispensary; and (4) there was a larger amount of cocaine in the

15

apartment's closed oven. *Id*. The TCCA explained that this evidence established that the petitioner "entered an apartment that appeared to function solely as a cocaine dispensary and that he did so in the company of the [other person], who was carrying cocaine, a gun, and two sets of scales." *Id*. The TCCA acknowledged this evidence was "not overwhelming," and it observed the inquiry was "somewhat complicated" by the petitioner's status as the apartment leaseholder. *Id*. at *5-6. Nevertheless, the TCCA concluded that the trial was neither unreliable nor unfair and there was no reasonable probability that the outcome of the trial would have been different, had the petitioner not admitted guilt to aggravated burglary. *Id*.

### 3. Discussion

After careful consideration, the court concludes that the state court's determination of this claim was an unreasonable application of *Strickland*.[8] As an initial matter, the TCCA reasonably applied *Strickland* to conclude that trial counsel rendered constitutionally-deficient performance. While matters of trial strategy are typically left to counsel's discretion, *Dixon v. Houk*, 737 F.3d 1003, 1012 (6th Cir. 2013), trial counsel's advice to admit guilt to aggravated burglary obviously did not arise from "a thorough investigation of the law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Rather, the record reflects that trial counsel failed to engage in a thorough investigation. Indeed, trial counsel has never explained *any* investigation or attempted to justify ignoring crystal-clear warnings about the impact of the petitioner's admission of guilt on the drug charge. *See Bigelow*, 367 F.3d at 570 (explaining that counsel has a duty to make reasonable investigations or "make a reasonable decision that makes particular investigations

---

[8] The petition phrases this issue in terms of an unreasonable application of both the facts and the law. (*See, e.g.*, Doc. No. 1-2 at 9.) However, the petitioner does not attempt to rebut the TCCA's determination of the facts. *See Ayers*, 623 F.3d at 308. The court therefore presumes the correctness of those factual determinations. Rather, the court construes the petition to claim that the TCCA unreasonably applied the law to the petitioner's ineffective assistance of counsel claim. (*See* Doc. No. 2 at 9 (claiming that the TCCA erred "by concluding that trial counsel's deficient performance "was not prejudicial to petitioner").)

16

unnecessary"); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) ("[A] failure to investigate . . . must be supported by a reasoned and deliberate determination that investigation was not warranted."). To the contrary, trial counsel testified at the post-conviction hearing that he "did not see any reason to try to change" his advice after the obvious warnings at the first trial. (Doc. No. 11-18 at 18, 24-26); *McCathern II*, 2017 WL 5462491, at *2. Trial counsel disregarded compelling law and facts indicating that the admission-of-guilt strategy was fundamentally unsound and would put the petitioner in direct legal jeopardy on the drug charge. Because this information was readily available to trial counsel (e.g., relevant Tennessee criminal statutes, plain language of the petitioner's indictment, statements and rulings of the trial judge, and explicit arguments of the state), the failure to make a reasonably thorough investigation dictates that trial counsel is not entitled to a presumption that he exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690-91.

Moreover, the TCCA evaluated trial counsel's advice and correctly found that it was so deeply flawed that it fell below an objective standard of reasonableness. Trial counsel's entire defense strategy was premised on the idea that the state "could not prove" a connection between the petitioner and the cocaine in the apartment oven. (Doc. No. 11-18 at 13-15); *McCathern II*, 2017 WL 5462491, at *2. Yet, as he acknowledged at the post-conviction hearing, trial counsel *knew* the aggravated burglary charge alleged that the petitioner entered the apartment with intent to commit the drug charge. (*See* Doc. No. 11-18 at 26-27.) Thus, trial counsel's advice to confess to aggravated burglary negated any advantage from the state's failure to discover the petitioner's leasehold, supplied a critical missing connection between the petitioner and the apartment/drugs, and exposed the petitioner to direct legal jeopardy on the drug charge.[9]

---

[9] Moreover, the record reflects that this danger was likely unappreciated by the petitioner. Although the TCCA made no express findings on this subject, the post-conviction record contains little evidence that

17

The drug charge required the state to prove that the petitioner knowingly possessed twenty-six grams or more of cocaine with the intent to sell or deliver within one thousand feet of school property. (Doc. No. 11-1 at 5); Tenn. Code. Ann. §§ 39-17-417(a)(4), (i)(5); 39-17-432(b)(1). By admitting guilt to aggravated burglary, the petitioner effectively admitted that he entered a habitation with the intent to commit possession of cocaine with intent to sell or deliver as charged in the indictment. (Doc. No. 11-1 at 4); Tenn. Code Ann. §§ 39-14-402; 39-14-403, *repealed by* 2021 Pub. Acts, c.545, § 3, (July 1, 2021).[10] Thus, the petitioner's admission effectively served as a concession that he "acted with the requisite mens rea and that the cocaine was destined for resale," and it directly impacted the jury's determination of the "sole remaining question [on the drug charge], whether [the petitioner] actually obtained possession." *McCathern II*, 2017 WL 5462491, at *5. In other words, the admission meant that the petitioner had reduced or relieved the state of its burden to prove the only disputed elements of the drug charge. To make matters worse, the admission was unnecessary given the availability of other plausible defenses based on the petitioner being a trespasser without knowledge of or intent to distribute the cocaine in the oven. *Id*. Because the advice to admit guilt to aggravated burglary fell below prevailing professional

---

trial counsel ever meaningfully explained or discussed the advice to admit guilt. The petitioner testified that he "took [trial counsel's] word" because he had "no knowledge to any legal activity," (Doc. No. 11-18 at 37-38), and that he did not understand the defense strategy going into the second trial. (*Id*. at 40, 45.) The petitioner testified that trial counsel "never discussed" the admission of guilt with the petitioner between the two trials due to an outstanding demand for $15,000 from trial counsel to the petitioner. (*Id*. at 49.) According to the petitioner, the only explanation offered by trial counsel was: "[R]elax big daddy, you riding with the best, I've been in this court twenty-two years." (*Id*. at 40.) In short, even if the petitioner agreed to trial counsel's strategy, *see McCathern II*, 2017 WL 5462491, at *2, there simply is no indication in the record that the petitioner understood the impact of the admission of guilt on the drug charge.

[10] On July 1, 2021, the Tennessee aggravated burglary statute was amended and retitled. *See* Tenn. Code Ann. § 39-13-1003. However, the court considers the statute in effect at the time of the petitioner's indictment and trial. *See, e.g.*, *Wenglikowski v. Jones*, 162 F. App'x 582, 587 (6th Cir. 2006) (considering habeas claim under relevant law "at the time of trial").

18

norms, *Strickland*, 466 U.S. at 687-88; *Bigelow*, 367 F.3d at 570, the TCCA reasonably concluded that trial counsel rendered constitutionally-deficient performance.

However, the TCCA unreasonably applied the prejudice prong of *Strickland*. The Supreme Court has observed that a federal habeas court cannot hold that a state court prejudice determination was lacking in justification "without identifying – let alone rebutting – all of the justifications." *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (quoting *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2021)). Accordingly, the court "carefully consider[s] all the reasons and evidence" used by the TCCA to support its prejudice determination, *id*. at 1149, and gives the TCCA all due "latitude." *Shinn*, 141 S. Ct. at 523 (quoting *Knowles*, 556 U.S. at 123). The inquiry is truncated in this case, however, because the TCCA based its prejudice determination on scant evidence.

The TCCA justified its prejudice determination by relying on the petitioner's "enter[ing] an apartment that appeared to function solely as a cocaine dispensary . . . in the company of the co-defendant, who was carrying cocaine, a gun, and two sets of scales." *McCathern II*, 2017 WL 5462491, at *5. In support of this justification, the TCCA cited evidence that: (1) the petitioner and another individual were seen "entering [a] seemingly empty apartment through the window" after "approaching a car in a parking lot"; (2) the other individual was stopped before entering the apartment and found to have put down a small amount of cocaine, a gun, and two scales; (3) the apartment contained nothing but two chairs and some drug paraphernalia, and it appeared to function as a drug dispensary; and (4) there was a larger amount of cocaine in the apartment's closed oven. *Id*. The TCCA cited no other evidence to support the petitioner's conviction on the drug charge or the prejudice determination; indeed, the court concluded that the state's evidence was "not overwhelming." *Id*. at *5-6.

19

This evidence provides no reasonable basis to conclude that the petitioner failed to establish prejudice under *Strickland*. Foremost, the evidence relied upon by the TCCA does not establish the drug charge's element of possession. The TCCA cites no evidence of the petitioner's actual possession and the record contains none. No witness testified about why the petitioner was at the apartment; no witness provided any concrete connection between the petitioner and the cocaine or the petitioner and the other person; no witness testified that the petitioner attempted to access the cocaine in the apartment; no other evidence directly connected the petitioner to the cocaine or to the apartment; and the petitioner had nothing on his person to suggest any connection to the apartment or drug dealing. (*See* Doc. No. 11-2); *McCathern II*, 2017 WL 5462491, at *1.

Rather, the TCCA relied on circumstantial evidence of constructive possession. In Tennessee, constructive possession can be proven by circumstantial evidence. *See State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing Tenn. Code Ann. § 39-17-419); *State v. Dorantes*, 331 S.W.3d 370, 380-81 (Tenn. 2011). But constructive possession requires proof that a defendant "had the power and intention at a given time to exercise dominion and control over the drugs either directly or through others." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (quoting *State v. Patterson*, 966 S.W.2d 435, 444 (Tenn. Crim. App. 1997)). In other words, the state must prove that a defendant had "the ability to reduce [the drugs] to actual possession." *State v. Ross*, 49 S.W.3d 833, 845-46 (Tenn. 2001) (citations omitted). Importantly, circumstantial evidence used to prove constructive possession (1) must be sufficient for a rational trier of fact to find a defendant guilty beyond a reasonable doubt, and (2) "may not be based solely upon conjecture, guess, speculation, or a mere possibility." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) (citing *Rucker v. State*, 129 S.W.2d 208 (Tenn. 1939)). Thus, circumstantial evidence of "[t]he mere presence of a person in an area where drugs are discovered is not, alone,

sufficient to support a finding that the person possessed the drugs." *Cooper*, 736 S.W.2d at 129 (Tenn. Crim. App. 1987) (citing *Dishman v. State*, 460 S.W.2d 855, 858 (Tenn. Crim. App. 1970)). "Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." *Id*. (collecting cases); *Shaw*, 37 S.W.3d at 903; *see also, e.g., Whited v. State*, 483 S.W.2d 594, 596 (Tenn. Crim. App. 1972) (reversing conviction for possession of drugs located on premises in absence of "further proof of [the] defendant's complicity as to the possession and control of the drugs").

Applying these rigorous standards, the circumstantial evidence relied upon by the TCCA is insufficient, as a matter of law, to prove constructive possession. The evidence of the petitioner's approaching a car is both irrelevant to control over the cocaine in the oven and utterly speculative. Moreover, the trial record reflects that only one of the three MNPD officers, Thomas Spence, saw the petitioner have a "short conversation" with the occupants of a vehicle and then "kind of walk[ ] around." (Doc. No. 11-2 at 17.) Spence later admitted that he had only seen "silhouettes" from "twenty meters away" displaying "the beginnings of what [he] believe[d] was going to be [a drug transaction]"; he had not seen any drugs, any money, or heard any conversation; the police officers' reports contained no mention of the car; and the officers had no knowledge of or information about the car or its occupants. (*Id*. at 53-60.) It is unreasonable to conclude that this wildly speculative evidence proves that the petitioner possessed the cocaine in the apartment oven beyond a reasonable doubt. *Cooper*, 736 S.W.2d at 129.

The remaining evidence fares no better. Taken together, it establishes no more than that the petitioner was associated with another individual who possessed a small amount of cocaine, drug paraphernalia, and a weapon, and that the petitioner entered through a window a dark, empty

21

apartment where cocaine was later discovered inside an unaccessed oven. There is nothing to suggest that the petitioner sought to possess the cocaine in the empty apartment oven. Even if the court were to infer, as the state argued at trial, that the petitioner was caught "in [a] building for which there's only one use," (Doc. No. 11-2 at 174), there is no *evidence* – let alone evidence beyond a reasonable doubt – that the petitioner was able or willing to "reduce [the cocaine in the oven] to actual possession." *Ross*, 49 S.W.3d at 845-46. Indeed, Spence testified that he "never" heard the petitioner open or close the oven during the 1-2 minutes that the petitioner was in the apartment. (Doc. No. 11-2 at 69.) Furthermore, the landlord testified at trial that tenants had rented and "taken possession" of the apartment, but he did *not* identify the petitioner as having any interest in the apartment. *See McCathern II*, 2017 WL 5462491, at *1. Accordingly, absent improper speculation, the evidence relied upon by the TCCA does not establish that the petitioner had the intent or ability to exercise dominion over the cocaine in the oven. *Shaw*, 37 S.W.3d at 903; *Cooper*, 736 S.W.2d at 129.

The TCCA's cited evidence is also insufficient to prove intent. The state was required to prove that the petitioner had "intent to manufacture, deliver, or sell" the cocaine found in the oven. *See* Tenn. Code. Ann. § 39-17-417(a)(4). In determining intent, a jury may consider circumstantial evidence, including "the amount of a controlled substance . . . possessed by an offender, along with other relevant facts surrounding the arrest." Tenn. Code Ann. § 39-17-419; *State v. Belew*, 348 S.W.3d 186, 190 (Tenn. Crim. App. 2005). Because there is no evidence that the petitioner ever possessed the cocaine in the apartment, however, circumstantial evidence of the amount of the cocaine in the oven is entirely speculative concerning the petitioner's intent. *See Cooper*, 736 S.W.2d at 129 (explaining that a conviction based upon circumstantial evidence may not be based on "a mere possibility"). Lacking any connection between the petitioner and the apartment or

22

cocaine, the other evidence relied on by the TCCA establishes only the petitioner's intent to accompany the other person and briefly enter the empty apartment. And the trial record does not supply "other relevant facts surrounding the [petitioner's] arrest" sufficient to establish the petitioner's intent beyond a reasonable doubt. Tenn. Code Ann. § 39-17-419. To the contrary, under cross-examination Spence testified that the MNPD entirely failed to collect such potentially-relevant "other" evidence, including: any information concerning the car or its occupants; fingerprints from any surface in the apartment, including the oven at issue; fingerprints from any piece of evidence seized from the apartment, including the cocaine at issue; any tangible evidence from the apartment that could be tied to an individual; and any photographs of the apartment taken prior to the movement of items and limited collection of evidence.[11] (*See* Doc. No. 11-2 at 71-79.) Thus, the circumstantial evidence relied on by the TCCA requires pure conjecture to conclude the petitioner intended to distribute the cocaine in the oven. *Shaw*, 37 S.W.3d at 903; *Cooper*, 736 S.W.2d at 129.

The jury was, therefore, presented with circumstantial evidence insufficient to prove the disputed possession and intent elements of the drug charge. Accordingly, there can be no "fairminded disagreement" that, without the petitioner's admission of guilt to aggravated burglary and effective concession of these elements of the drug charge, there is a reasonable probability the outcome at trial would have been different. *Carter*, 829 F.3d at 468 (quoting *White*, 572 U.S. at 427); *Strickland*, 466 U.S. at 694; *Premo*, 562 U.S. at 122. Indeed, because the aggravated burglary and drug charges were inextricably linked, trial counsel's deficient advice all but ensured that the petitioner's trial would be "fundamentally unfair or unreliable." *Bigelow*, 367 F.3d at 570 (quoting

---

[11] The trial record reflects certain "other facts" that cut *against* the petitioner's intent. For example, the petitioner did not carry any drugs, weapons, or cell phones, which Markell testified are tools of the trade of drug dealers.

23

*Lockhart*, 506 U.S. at 369). Because the court cannot identify "any reasonable argument" that the prejudice element is not satisfied, *Richardson*, 941 F.3d at 856, the state court's determination was unreasonable. The petitioner is therefore entitled to habeas relief on this claim. *See Miller-El*, 537 U.S. at 340 ("Deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief. . . . A federal court can . . . when guided by AEDPA, conclude [a state court] decision was unreasonable.").

### C.   Claim Two: Trial counsel was constitutionally ineffective for advising the petitioner to waive his Fifth Amendment rights

The petitioner next claims that trial counsel was constitutionally ineffective for advising him to waive his Fifth Amendment rights. (Doc. No. 14 at 4-5.) Liberally construing the petition in conjunction with prior filings, the petitioner contends that his aggravated burglary plea was not knowing, voluntary, or intelligent because trial counsel failed to inform the petitioner that the plea "would be used against him" on the drug charge. (Doc. No. 11-15 at 61.) The petitioner maintains that trial counsel had a duty to advise him of the direct consequences of the plea.[12] (Doc. No. 11-23 at 25-28.) This claim is fully exhausted.

The TCCA implicitly concluded that trial counsel's advice did not impact the petitioner's Fifth Amendment right against self-incrimination because the petitioner did not enter a guilty plea or functional equivalent. This was a reasonable conclusion. The Fifth Amendment requires that a defendant enter his guilty plea "knowingly, voluntarily, and intelligently." *United States v. Taylor*, 627 F.3d 1012, 1017 (6th Cir. 2010) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also* U.S. Const. am. V. ("No person . . . shall be compelled in any criminal case to be a witness

---

[12] The petitioner also invokes Tennessee Rule of Evidence 410 to contend that "evidence of these plea negotiations was inadmissible." (*See* Doc. No. 14 at 4-5.) However, a claim that a state trial court erred in the application of an evidentiary rule, without more, does not provide a cognizable basis for granting habeas relief. *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

24

against himself."). "A guilty plea . . . is an event of signal significance in a criminal proceeding." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). A guilty plea is more than a "voluntary confession made in open court" or a "confession which admits the accused did certain acts." *Boykin*, 395 U.S. at 242-43 & n.4. Rather, a guilty plea is a "stipulation that no proof by the prosecution need be advanced," and it yields "a conviction" for which "nothing remains but to give judgment and determine punishment." *Id*. In the absence of a guilty plea, the state is "obliged to present during the guilt phase competent, admissible evidence establishing the essential elements of the crime[ ] . . . charged." *Nixon*, 543 U.S. at 188.

The record reflects that the petitioner's admission of guilt was not the functional equivalent of a guilty plea because the state was "still tasked with proving the elements of [the aggravated burglary] offense beyond a reasonable doubt." *Nixon*, 543 U.S. at 188. Indeed, no plea colloquy occurred; no judgment was entered upon the petitioner's admission; the petitioner agreed that the aggravated burglary charge should be submitted to the jury for proof; the burglary charge was argued to the jury; and the jury returned a verdict on the burglary charge. *See McCathern II*, 2017 WL 5462491, at *5. Because there is no indication that the petitioner's admission served as a stipulation that the state need not advance further proof, the TCCA reasonably concluded that the petitioner made an "in-court confession" rather than a guilty plea. *Id*. at *4-5. Thus, the Fifth Amendment waiver protections invoked by the petitioner do not apply.

To the extent that the petitioner gave an in-court confession, the Fifth Amendment prohibits only the prosecution's use of compelled testimony in the case-in-chief. *United States v. Calvetti*, 836 F.3d 654, 662 (6th Cir. 2016) (citing *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985)). The petitioner does not claim that the state compelled him to admit guilt, nor does the petitioner suggest that trial counsel was acting in concert with the state. Because the state was obligated to prove

aggravated burglary beyond a reasonable doubt and the petitioner retained his Fifth Amendment rights at trial, the petitioner is not entitled to habeas relief on this claim.

### D. Claim Three: Trial counsel failed to make an offer of proof that the petitioner was the rightful tenant of the apartment he was accused of burglarizing

The petitioner next argues that trial counsel was constitutionally ineffective for failing to make an offer of proof in the motion for a new trial that the petitioner was "the rightful tenant of the apartment." (Doc. No. 2 at 15.) The petitioner contends that the trial court would have concluded from this evidence that he was not guilty of aggravated burglary. (*Id.*) The petitioner is not entitled to relief on this claim for two reasons.

First, this claim is conclusory. Habeas Rule 2(c) provides that a petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." The rule is even "more demanding" than Rule 8 of the Federal Rules of Civil Procedure. *Jarvis v. Hollway*, No. 3:15-cv-0388, 2016 WL 454777, at *13 (M.D. Tenn. Feb. 4, 2016) (quoting *Mayle v. Felix*, 545 U.S. 644, 655–56 (2005)). A conclusory claim for habeas relief that sets forth insufficient facts may summarily be dismissed. *Edwards v. Johns*, 450 F. Supp. 2d 755, 756 (E.D. Mich. 2006). Here, the petition states only that the petitioner informed trial counsel that he had rented the apartment under the alias Eric Davis, and the apartment manager testified at the *first* trial that the leaseholder's name was Eric Davis. (Doc. No. 2 at 15.) The petition does not attach the lease of Eric Davis or describe what the petitioner expected trial counsel to argue concerning the lease in the motion for a new trial. Because the court cannot evaluate this vague claim against constitutional standards, it does not satisfy the pleading requirements of Habeas Rule 2. *See, e.g.*, *Creech v. Taylor*, No. 13-1 65, 2013 WL 6044359, at *3 (E.D. Ky. Nov. 14, 2013) (dismissing habeas petition containing only "[c]onclusory allegations with no accompanying evidentiary support").

Second, this claim is procedurally defaulted. The petitioner raised the apartment leasehold during state post-conviction proceedings in the context of a claim that trial counsel failed to file a motion to suppress evidence. (*See* Doc. Nos. 11-15 at 27-28, 50-51, 56-64, 90; 11-18; 11-23 at 31-33.) Thus, the TCCA considered only whether the petitioner's acknowledgment of a possessory interest in the apartment would have "given him standing to move for suppression of the evidence" on the drug charge. *See McCathern II*, 2017 WL 5462491, at *7. It is entirely different to claim that the apartment leasehold should have been used to argue innocence in a motion for a new trial. Because the petitioner has not given the Tennessee courts an opportunity to consider "the same claim under the same theory" in the first instance, *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009), and a state procedural rule prohibits the state courts from considering this claim now,[13] *see In re Hall*, 795 F. App'x 943, 944 (6th Cir. 2019) (noting Tennessee law "generally bars second postconviction proceedings"), the claim is deemed exhausted (since there is no "available" state remedy) but procedurally defaulted from federal habeas review. *Coleman*, 501 U.S. at 752-53; *Atkins*, 792 F.3d at 657.

Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a procedural default of a claim of ineffective assistance of counsel at trial. *Martinez*, 566 U.S. at 9; *Sutton*, 745 F.3d at 792. However, "*Martinez* does not apply to claims of post-trial ineffectiveness" in connection with a motion for a new trial. *Petty v. Hampton*, No. 3:18-cv-00576, 2020 WL 3964207, at *17 (M.D. Tenn. July 13, 2020) (collecting cases); *Johnson v. Genovese*, No. 3:18-cv-00539, 2021 WL 3269954, at *18 (M.D. Tenn. July 30, 2021); *Rogers v. Westbrooks*, No. 3:13-cv-00141, 2019 WL 1331035, at *11 (M.D. Tenn. Mar. 25, 2019) (quoting *Martinez*, 566 U.S. at 12; *Davila*, 137 S. Ct. at 2066-67); *see also, e.g.*, *Reid v. United States*, No. 18-5432,

---

[13] None of the limited statutory provisions for reopening a first postconviction proceeding applies. *See* Tenn. Code Ann. § 40-30-117.

2018 WL 11303655, at *2 (6th Cir. Aug. 28, 2018) ("The Supreme Court has never held that a hearing on a motion for a new trial is a critical stage of a criminal proceeding, however, and specifically declined to do so in *Marshall*.") (quoting *Marshall v. Rodgers*, 569 U.S. 58, 61, 64 (2013)); *Milam v. Davis*, 733 F. App'x 781, 784, 786 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 335 (2018) (applying *Davila* to hold that *Martinez* does not apply to claim of ineffectiveness in motion for new trial and on appeal).

Even if *Martinez* were to apply, the petitioner must establish that he has a "substantial" ineffective-assistance-of-counsel claim. *Atkins*, 792 F.3d at 658; *Martinez*, 566 U.S. at 14. For a claim to be substantial, it must have "some merit," *Atkins*, 792 F.3d at 660 (quoting *Martinez*, 566 U.S. at 14), and be "debatable among jurists of reason." *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015). The petitioner has not made that showing here. At the time of the motion for new trial, the petitioner's in-court admission was "strong evidence of guilt" on the aggravated burglary charge. *Rust*, 17 F.3d at 161-62. Accordingly, the motion for a new trial focused on arguments that the evidence was insufficient for the petitioner's conviction on the drug charge. (*See* Doc. No. 11-1 at 31-32.) The choice of trial counsel to pursue his client's stronger arguments does not fall below objective standards of professional reasonableness. *Strickland*, 466 U.S. at 688; *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745, 753 (1983). Particularly in light of the confession, the petitioner has not articulated any compelling reason why the decision to focus on the drug charge was incorrect or why the omission of the leasehold was unreasonable. Furthermore, the petitioner has not demonstrated that there was a reasonable probability of a different outcome if trial counsel had raised the leasehold in the motion. *Premo*, 562 U.S. at 122; *Strickland*, 466 U.S. at 694. Rather, the petitioner raises only a speculative possibility of prejudice. *Baze*, 371 F.3d at 322. Because the petitioner has not established that this claim has "some merit,"

it is not "substantial" under *Martinez* and cannot be used as cause to excuse the procedural default. *Atkins*, 792 F.3d at 660. The court will, therefore, deny habeas relief on this claim.

### E.    Claim Four: Trial counsel did not contest the duplicity of the indictment

Finally, the petitioner claims that trial counsel was constitutionally ineffective because he failed to contest the "duplicity" of his indictment. (Doc. No. 14 at 2-3.) The petitioner contends that the indictment was duplicitous because it charged both aggravated burglary and possession of cocaine with intent to sell or deliver. (*Id*.) The petitioner concedes, however, that he "fail[ed] to articulate" this theory to the Tennessee courts. (*Id*. at 3.) Because the opportunity for the petitioner to present this claim to the state courts has passed, the claim is deemed exhausted (since there is no "available" state remedy) but procedurally defaulted from federal habeas review. *Coleman*, 501 U.S. at 752-53; *Atkins*, 792 F.3d at 657. The petitioner has suggested no reason to excuse the default. To the extent that the petitioner relies on the failure of post-conviction counsel to raise this ineffective-assistance-of-trial-counsel claim, the claim must have "some merit" to be "substantial." *Atkins*, 792 F.3d at 660 (quoting *Martinez*, 566 U.S. at 14).

An indictment is duplicitous if it "'sets forth separate and distinct crimes in one count.'" *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011); *United States v. Anderson*, 605 F.3d 404, 414 (6th Cir. 2010). The concern with a duplicitous count is that "a 'jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense.'" *Boyd*, 640 F.3d at 665 (quoting *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002)); *see also United States v. Giampietro*, 475 F. Supp. 3d 779, 786 (M.D. Tenn. 2020) (citing *United States v. Damrah*, 412 F.3d 618, 622 (6th Cir. 2005)). The petitioner's indictment, (*see* Doc. No. 11-1 at 4-6), charged three separate, well-established state criminal offenses that require proof of different elements. *See Giampetro*, 475 F. Supp. 3d at 786 (citing *Damrah*, 412

F.3d at 622) (noting that the "decisive criteria" for resolving duplicity concerns are legislative intent and separate proof). Furthermore, the petitioner has not demonstrated how he was harmed by the wording of the indictment as opposed to other developments at trial. *See Damrah*, 412 F.3d at 623 (explaining that a duplicitous indictment is harmless unless the concerns raised by duplicity actually exist); *United States v. Alsobrook*, 620 F.2d 139, 142 (6th Cir. 1980) ("Ultimately, the indictment must be measured in terms of whether it exposes the defendant to any of the inherent dangers of a duplicitous indictment.").

Because the duplicity claim has no merit, trial counsel was not required to raise it. *Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998); *Moore v. United States*, No. 3:13-01362, 2014 WL 1575649, at *4 (M.D. Tenn. Apr. 21, 2014). And the petitioner may not use post-conviction counsel's failure to raise the issue to excuse the procedural default. The court will deny habeas relief on this claim.

## V.    Conclusion

Federal and state judges alike have long called the writ of habeas corpus "the Great Writ." *See, e.g.*, *Ex Parte Watkins*, 28 U.S. 193, 201 (1830) (Marshall, C.J.); *Pinholster*, 563 U.S. at 210 (Sotomayor, J., dissenting). The writ gives judges a unique power to right wrongs that occur in criminal cases. Justice Frankfurter explained that "[t]he uniqueness of habeas corpus in the procedural armory of our law cannot be too often emphasized. It differs from all other remedies in that it is available to bring into question the legality of a person's restraint and to require justification for such detention. Of course this does not mean that prison doors may readily be opened. It does mean that explanation may be exacted why they should remain closed." *Brown v. Allen*, 344 U.S. 443, 512 (1953) (Frankfurter, J.). Since 2013, Eric McCathern has consistently asked whether his prison doors should remain closed in the wake of trial counsel's deficient advice

30

to confess to aggravated burglary. After much consideration, this court now concludes that federal habeas relief is required on this claim. The state court's determination that McCathern was not prejudiced by trial counsel's performance is so lacking in justification as to be an "extreme malfunction," *Harrington*, 562 U.S. at 102-03, for which the writ of habeas corpus is "the best . . . defense." *Ex Parte Yerger*, 75 U.S. 85, 95 (1868) (Chase, C.J.).

Accordingly, the petition will be granted with respect to Claim One and denied as to all other claims. Because the court will grant relief under Section 2254, McCathern's convictions and sentences on the aggravated burglary and drug charges will be vacated.[14] Unless the State of Tennessee re-tries McCathern within 90 days, he shall be released from further incarceration on

---

[14] Because the petitioner did not establish that trial counsel's advice constituted deficient performance and prejudice regarding the petitioner's other misdemeanor conviction, the conviction and sentence on Count Three will remain unchanged.

those charges.[15]

        An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[15] Because the court's ruling is adverse to the petitioner with respect to the majority of his claims, the court must determine whether to issue or deny a certificate of appealability ("COA") with respect to any of those claims. Rule 11, Rules Gov'g § 2254 Cases. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2), and the COA "must indicate which specific issue or issues satisfy the [required] showing." 28 U.S.C. § 2253(c)(3). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "If the petition [is] denied on procedural grounds, the petitioner must show "at least that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "[A] COA does not require a showing that the appeal will succeed," but courts should not issue a COA as a matter of course. *Miller-El*, 537 U.S. at 336. Having thoroughly considered whether any of the petitioner's denied claims warrant a COA, the court finds that jurists of reason would not disagree with the court's resolution of those claims. Accordingly, the court will deny a COA regarding those claims. The petitioner may, however, seek a COA directly from the United States Court of Appeals for the Sixth Circuit. Rule 11(a), Rules Gov'g § 2254 Cases.